69984. BUSBY v. THE STATE.
(330 SE2d 765)

DEEN, Presiding Judge.

A Cobb County jury found appellant Busby guilty of child molestation involving the five-year-old daughter of a neighbor for whom he baby-sat from time to time. He received a sentence of 15 years to serve, followed by five years' probation. He appeals this judgment on three grounds: the admission of the mother's allegedly hearsay testimony; the admission of the alleged victim's testimony despite her alleged incompetence to testify; and the denial of appellant's motion for a new trial. *Held*:

1. The mother of the victim testified that appellant, with whom her family had been friendly for approximately one and one-half years, had agreed to baby-sit with her daughter, her only child, while she and her common-law husband attended a party in the neighborhood. Upon departing, they had made no mention of the hour at which they expected to return, and when they came home some two hours later they found appellant, clad only in his underwear, making a sandwich in their kitchen. The mother further testified that, although somewhat surprised at his attire, she had made no comment at the time; and that after a few minutes' desultory conversation appellant had gone into the apartment's sole bedroom and donned his outer garments, and then had returned to his own apartment. The mother further testified that the little girl, whom she had undressed and put to bed before leaving for the party, thereupon called to her from the bedroom, complaining that she "hurt." Since the child had a chest cold, the mother assumed (according to her testimony) that her chest was uncomfortable, but the child told her that the pain was in her pubic area and thighs, and that appellant had "hurt" her by lying on top of her and pressing his penis against her vulva.

The mother went on to testify that she had visually inspected the child's body and had observed redness in the pubic or vaginal area and a bruise on the leg, together with a substance that appeared to be semen. She testified also that the child was crying and otherwise appeared emotionally upset. The mother and her companion then summoned appellant and questioned him; he denied the accusation and accused the child of lying. Police were summoned, and the child was taken to a local hospital for physical examination; her bruised and scratched legs were photographed by police. One of the investigating officers testified at trial that this physical examination and related laboratory work, together with laboratory examination of the sheet taken from the child's bed and body hairs taken from the appellant and the child, had yielded inconclusive results: although there were deep scratches on the thighs and the vulva was reddened, there was no positive evidence of penetration; there was no positive evidence of the presence of semen; and hairs taken from the sheet could not positively be identified as having come from the body of appellant. The physician who examined the child at the hospital testified that, in view of the scratches, bruises, and reddening of the child's pubic area and adjacent areas, "It was apparent that . . . someone had attempted rape . . ." A Michigan woman and her teen-aged son, with a member of whose family appellant had resided some nine years previously, testified to multiple instances of appellant's molestation or sexual abuse of the boy and his sister during that time.

Our scrutiny of the trial transcript, together with the remainder of the record, persuades us that the child's report to the mother re-

garding the alleged acts of child molestation was made at the earliest feasible opportunity; that is, just minutes after the departure of the alleged molester, whom she might reasonably be regarded as fearing sufficiently to prevent her calling out to her mother at the moment of the latter's return, and while appellant was still present. Thus the state's contention that the child's tearful complaints to her mother might reasonably be considered a part of the *res gestae* is not necessarily incorrect as a matter of law, appellant's contentions to the contrary notwithstanding. See, e.g., *Robinson v. State*, 232 Ga. 123 (205 SE2d 210) (1974); *Walls v. State*, 166 Ga. App. 503 (304 SE2d 547) (1983).

Moreover, the mother's testimony as a whole contained so small a proportion of what might arguably be characterized as hearsay testimony that, in light of the abundance of other evidence adduced at trial (testimony regarding appellant's deshabille and the child's distraught manner and bruised and scratched body, the police photographs of the child's legs, the examining physician's testimony regarding his findings, and the fact that the child had reported the alleged incident to her mother at the first reasonable opportunity), the incorporation of the challenged testimony into the mother's narrative account elicited upon direct and cross-examination could hardly have been significantly prejudicial to appellant. Applying the test articulated in *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976), we find it " 'highly probable that the error [if any] did not contribute to the judgment.' "

2. Scrutiny of the record further persuades us that appellant's assignment of error to the trial court's determination that the child was competent to testify is also without merit. Although her replies were not always fully responsive and did not demonstrate a firm grasp of such abstractions as the duration and frequency of events occurring in a temporal framework, her replies to the questions concerning her everyday life and those pertaining to the alleged molestation incident were clear and responsive, and she demonstrated an understanding of the nature of an oath; of the difference between a truthful statement and a lie; and of the consequences of the latter. See, e.g., *Smith v. State*, 247 Ga. 511 (277 SE2d 53) (1981); *Hutter v. State*, 166 Ga. App. 608 (305 SE2d 124) (1983). We hold, therefore, that the trial court did not abuse its discretion in permitting the child to testify. *Pendergrass v. State*, 168 Ga. App. 190 (308 SE2d 585) (1983). There was no evidence (other than the mother's statement that appellant had accused the child of "lying again") that the child's allegations and complaints were anything other than truthful, or that she was in the habit of fabricating such incidents. On the other hand, there was evidence that appellant had been guilty of making improper advances to another child in another city on prior occasions. Testi-

mony regarding appellant's attire upon the parents' return was undisputed, as was the evidence regarding the child's physical condition. As with respect to the enumeration discussed in Division 1, supra, we find that there was sufficient competent evidence adduced to authorize a reasonable trier of fact to find appellant guilty as charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hampton v. State*, 250 Ga. 805 (301 SE2d 274) (1983).

3. In view of our conclusions in Divisions 1 and 2, supra, we hold that the trial court did not err in denying appellant's motion for a new trial.

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED APRIL 10, 1985.

*Ralph W. Kearns, Jr.*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Assistant District Attorney*, for appellee.